I understand that we have a group of law students here from the University of Missouri at Columbia, is that true? Welcome, are you first or second year students? First, so you haven't become jaded yet with your professors or anyone else. Well, we hope that you'll enjoy the arguments. I don't know how long you can stay, but we're glad that you're here. Madam Clerk, would you call the first case for argument, please? The first case for argument is 13-2015, Eastern District of Missouri, United States v. Antonio Shaw May it please the Court, thank you for allowing me the opportunity to present my argument before you today. And for the record, you are Ms.? My name is Tanya Aldada and I represent the on behalf of Mr. Shaw. Thank you, my pleasure. I'd like to start off by saying that this case was not the traditional drug conspiracy case that you typically see and was a result of a broad investigation of separate and distinct incidences and was basically a hodgepodge that formed this conspiracy. Particularly, probably because Antonio Shaw did not have the best reputation in St. Louis. That may enlighten the Court as to the progression of this case and give some highlight as to our points on appeal of point two and three. I'd like to start out with our first point on appeal, which concedingly is our strongest argument, and that is in regards to the mandatory minimum sentence of the 924C count, wherein the district court made a finding that Antonio Shaw brandished a weapon which would induce a seven-year mandatory minimum. Did anyone argue that it should have been a jury issue? The jury, in fact, did make a finding in that regard. The jury did make a finding that Antonio Shaw possessed a weapon. The jury instructions that were given to the jury had made no mention of brandishing and they did find that Antonio Shaw possessed a weapon. But it wasn't asked to determine whether it was brandished? No, it was not. But the jury did make a finding that Antonio Shaw did possess a weapon which would induce the mandatory minimum of five years, which is in line with Elaine and Laura Ruiz, wherein the facts are similar in that sense where the jury did find a finding that in those cases, the defendant possessed a weapon rather than brandished. And therefore, the mandatory minimum should have been a five-year mandatory minimum, which would warrant redress. And that's exactly what we're asking for and resentencing by the district court. And the government's all but conceded that, right? The government has conceded this point, Your Honor. Yes. Although I think Judge Wollman wrote a pretty good dissent in Laura Ruiz. Judge Wollman did write a good dissent. Judge Wollman also stated in that dissent that should the district court provide a lower sentence or impose a lower sentence, then it would not constitute harmless error. And so in this respect, we don't know what the district court would do if it were to go back for resentencing. Well, I understand. The panel is bound by Laura Ruiz. Okay. In line with the sentencing, our next point revolves around the relevant conduct and prior convictions of Antonio Shaw. And we cited United States v. Spotted Elk, where the relevant conduct should have been revolved around Antonio Shaw's prior convictions and not the undertaking of another co-conspirator. Specifically, that is in regards to the murder that was presented in sentencing of Donald Mack and Adolph Ellison. Those murders had no connection to Antonio Shaw, as Detective Hennewinkle did state throughout sentencing that there was no connection made to these murders. The only link that the government had with respect to this murder was Stanley Carter. Stanley Carter's testimony should have been in question, considering in light of his credibility and the fact that he had been lying throughout the progression of his entire case, including lying throughout an evidentiary hearing. And in regards to those murders, those murders revolved around a heroin trade. There was nothing in regards to Antonio Shaw's charges revolving around heroin. There was made no mention of heroin within the trial. Heroin was not an issue at all within this case. In fact, heroin was an issue with Stanley Carter. Stanley Carter was an was involved with heroin. And also, there was no mention with Antonio Shaw and heroin. So there was no connection between why Antonio Shaw would murder Donald Mack and Adolph Ellison. And that's in line with U.S. v. Alexander, where they stated that the government should have shown that the in the sentencing at all. There's no mention that Antonio Shaw would have benefited from these murders or that he was connected to these murders. The only evidence that they had was Stanley Carter saying that Antonio Shaw was there. But Detective Hanewinkle, which is credible, stated that there is no forensic evidence that Antonio Shaw was there or that he was present and that there was no connection. So what evidence was there that he was there? What? Sorry, Your Honor. What evidence? The only evidence that the government presented that Antonio Shaw was there was that from Stanley Carter, one of the co-defendants. And if he is believed, that's sufficient, isn't it? It is. And didn't Mr. Shaw express some pleasure over the fact that these two men had been killed? And that was only by word of Stanley Carter, Your Honor. And Stanley Carter, I believe, would have, should have had major credibility issues considering his progression in lying throughout the entire progression of his case. Even liars sometimes tell the truth. Sometimes. And who decides when they're telling the truth? I understand that the district court does have that discretion and that's why the standard is of use of discretion. But Judge, in this respect, there was no evidence presented that there was any link to Antonio Shaw benefiting from these murders. And that's what USV Alexander and Spotted Elk does point out, that there needs to be some sort of benefit and that nothing of that nature was presented. Did any of this evidence that you're challenging affect the guideline calculation? In fact, it did. The guideline, the government requested an upward variance in regards to the guidelines and the district court did use this murder. Those are two different things. The guideline calculations are the judge did, or the government requested an upward departure. And the judge did depart and increase the guideline range and included this murder and that from where the guidelines- So it was a departure under what section of the guidelines? Under section 1B1.3. That's relevant conduct. That's not a departure section. I think it was a variance, in which case it wouldn't have affected the guideline calculations. I do know that in the pre-sentence investigation report, the base offense was at a 43, wherein if it was just respect to the drugs in question, it would have been at an 18. And so by using the murders as part of the guideline sentence, it increased the sentence. He was at around 84 to 100 in some months, and it did increase the sentence in that respect. So the murders were used as an indication or applied to increasing his sentence, your honor. Well, let's assume that I'm right, at least my understanding, that it was used to vary upward after the guidelines had been calculated. Would there be anything improper about considering the alleged murder for that purpose? In that respect, it would not necessarily be improper, I would say. But the fact that to use the murder that Antonio Shaw was not connected to, or that there was made no connections to Antonio Shaw and these murders, I think is improper. There was no benefit being made. There was no connection being made by the government to Antonio Shaw and these murders. The only thing that they had was an incredible witness that said he was there, and that had major credibility issues. I think that was improper in itself that it was even considered. Stanley Carter admitted to these murders and admitted that it was not Antonio Shaw that committed these murders at all. There's nothing to say within Antonio Shaw's prior conduct or prior convictions that he was prone to this type of activity. Antonio Shaw didn't really have any gun counts. Mainly his priors consisted of minimal amounts of marijuana, nothing that would suggest a murder was foreseeable in that light. And I think that's where it becomes improper judge that it's not foreseeable to just Antonio Shaw. It may have been foreseeable to Stanley Carter, but it's not foreseeable to Antonio Shaw in that respect. And more in line with that, there were no charges issued against Shaw in regards to these murders. And I think that speaks volumes that Stanley Carter admitted to these. There's nothing indicating to the court that Antonio Shaw had anything to do with these murders really. And to our next point, with the sufficiency of evidence, most of the evidence that was presented was minimal amounts of marijuana. And to go from a jump from minimal amounts of marijuana to 72 pounds, there is no logical connection. But I think my time is up for now, and I'll reserve the rest for rebuttal. I noticed you were quite, in your brief, you're quite dismissive of the government's case, describing it as an ethereal conspiracy to distribute all these things. Well, that's an interesting way to put it. Yes, Your Honor. I'm sure the government has a different view, but go on. Thank you. We'll hear from the government. Good morning. Good morning. May it please the court, I am Thomas Ray. I represent the United States of America in this case. And Judge Woolman, you brought up an interesting point there at the very end. And one thing that I think I would agree with at the outset, and I think it's important, is that this isn't a typical case. Because Mr. Shaw was not your typical- Could you raise the lectern a bit so that you're closer to the- You can push a button on the side there, somewhere. All right, thank you. Is that better? Yes, Your Honor. Okay. This was not the typical case because Mr. Shaw and his conduct was not typical. The jury convicted Mr. Shaw of conspiracy with the intent, excuse me, conspiracy to possess with the intent to distribute marijuana and cocaine base, and possession of a firearm in furtherance of that drug conspiracy. The United States' case began with Exhibit 1. That was Mr. Shaw's own prior testimony under oath, which in summary, proved two important things. He was a drug dealer over a long period of time. And number two, that he needed to possess firearms, a firearm in connection with that drug dealing, because there was a lot of hatred out there towards his drug dealing. Now, that wasn't the only evidence we had. The United States presented a substantial amount of evidence, a significant number of instances that went on to prove that drug dealing as well as that firearm possession. And that evidence was sufficient to support the jury's verdict as to Counts 1 and Count 2. Those same admissions- How about the crack distribution? That's a little thin, 0.89 grams. Well, the jury didn't see it that way, Your Honor. They had an opportunity to review the United States' case as it related to marijuana, crack cocaine, as well as ecstasy. And Mr. Shaw was acquitted as it related to ecstasy. But when you talk about the crack cocaine, there are a couple of things there. We had the one incident, and I understand the- Are there any cases where we've said 0.89 grams would be a sufficient amount for distribution quantities? As I stand here today, I can't say that it is. But the court also doesn't look at only the quantity. There were a number of other factors that the jury took into consideration. That's one of the reasons why the jury heard from Edward Clay, who was a drug distribution expert, who talked about quantity is something you can take into consideration. Possession of firearms, packaging, tools of the trade, firearms, money, those types of things. All those things were evidence that was presented. But here's the other thing that's important. That's why we started with Exhibit 1. All of the government's evidence at trial, including evidence related to the crack cocaine, was consistent with what Mr. Shaw was saying. Number one, that he was, in fact, a drug dealer. But number two, that he never was a drug user. There was no evidence at trial ever that Mr. Shaw was a user of drugs. And one of the things that Edward Clay testified to was this idea that a drug user usually has one drug of choice. That's what they're focused on. When you have someone who's involved in multiple types of drugs, your marijuana and crack cocaine, that is another indicator of the drug distribution. This is an interesting case. Mr. Shaw is an interesting person, and I don't mean to be flippant about it. He would have been quite a successful entrepreneur had he gone into a different line of work. Well, and that, I think, takes us into the sentence in this case. And I think that's something that, frankly, the district court was taking into consideration. And I want to clarify a couple of points here, if I can, on the sentence and then address that issue. Let's turn to that for a moment. The district court did, in fact, vary upward from the advisory guideline range. While I think it's fair to say there was some use of the term relevant conduct throughout the sentencing hearing, it wasn't being used, that word wasn't being used the way the guidelines utilize it. I think some of the prior marijuana convictions and the amounts maybe were used as to increase the guidelines. You are correct, Judge Grunder. But not the murder situation. That's correct. The prior drug cases, they fell under the guidelines definition of relevant conduct. They were included to set the base offense level for purposes of the conspiracy, the marijuana distribution. And the law is clear on that. Even though it wasn't proven up at trial, if it falls within the conspiracy period, if it's related to that underlying conspiracy, even if it's personal use amounts, you can, in fact, include it as relevant conduct, which establishes our base offense level. Here's how we know the murder wasn't being used that way. There's a cross-reference for murder in the guidelines. That was not applied by the district court. The guideline range under count one was 84 to 105 months. That never changed. Had this been, had the murder been presented as relevant conduct for purposes of the guidelines, I believe that would have set the base offense level at 43, which would have put the guideline range based upon Mr. Shaw's interesting criminal history at 360 months to life. And that wasn't what happened. So Judge Grunder, when you talk about this being a variance, I believe that's correct. And the reality was this, the presentation- And I assume there was no reference made to any departure section of the guidelines, or was there? Not during the sentencing hearing. Now, to be candid with the court, when you look at the statement of reasons that was, the written statement of reasons that was filed after the sentencing hearing, there is a section in there that is checked as an upward departure based upon death. But then the court also checked the reasons for a variance from the guideline range and lists a number of 3553A factors that it took into consideration. So while I think it's fair to say that it's unclear based upon the statement of reasons, two things are clear. One, when you look at the sentencing transcript, it is clear that the judge did not change the base offense level based upon the presentation of the murder. And number two, the judge goes through, the district court judge goes through a recitation of the 3553A factors. I think there's a very eloquent discussion about Mr. Shaw's interests versus the interests of the community and society. And that goes directly to 3553A. Here's the other that's clear. The case law within this circuit indicates that when it's unclear in that regard, whether do we have an upward departure or an upward variance, it's of no moment, as long as the court makes a sufficient record during the sentencing hearing to show that it did in fact take into consideration the 3553A factors. And that's what that double homicide was being offered for, for the court to take that into consideration when it takes into consideration the 3553A factors, the history and characteristics of the defendant to protect the public. How do we determine adequate deterrence when making a fashioning inappropriate sentence? And that is what the court was doing when it took into consideration the double homicide. Now, the attack on that presentation of evidence to me isn't whether or not it was appropriate for consideration under 3553A. The attack as I understand it today is the credibility of one of the witnesses, Stanley Carter. Mr. Carter was not the only witness that the United States presented on that double homicide. It was Mr. William Ewing who received admissions from both Mr. Carter as well as Mr. Shaw as to Mr. Shaw's involvement in that double homicide. And just because Mr. Shaw wasn't the trigger puller doesn't mean he was any less involved in that murder. In fact, Judge Wollman, as you seem to touch upon, he took great pleasure in that happening when it was over. And as the driver, he was the individual who identified the victims, followed them, and initiated Mr. Bobbitt, Richard Bobbitt, and Mr. Carter to go out and actually murder them. The district court heard that testimony, was able to evaluate the credibility of that testimony, both Mr. Carter and Mr. Ewing, and believed it. I think one of the important things was the district court also had heard the evidence at trial. The district court also had Mr. Shaw's statements under oath about being involved in the drug trade and needing firearms. I mean, as the judge noted, Judge Autry, there was a turf war going on. And there was a great benefit to Mr. Shaw as a drug dealer, whether it's heroin or crack or marijuana or anything else, because of the danger that existed between those groups, there was a great benefit to Mr. Shaw. And so, number one, that evidence was presented for purposes of 3553A, which the evaluation of that evidence. How many trial days were there? I'm sorry, excuse me. How many trial days were there? This was, I believe, a six-day jury trial. And that ties into the second point, which goes to the sufficiency of the evidence. This jury heard a lot of evidence. They obviously started with Mr. Shaw's prior testimony. And then they heard from a number of enforcement officers. They heard about multiple instances where Mr. Shaw was, in fact, in the possession of either, and this was sort of the theme throughout the trial, drugs, guns, or money in combination, or all three. And again, each incident that the United States presented was consistent with the testimony that Mr. Shaw previously provided. As I stated in closing argument, that testimony alone was strong evidence for the jury to convict Mr. Shaw as to counts one and count two. But obviously, the United States provided much more. And that included, again, possession of the marijuana, possession of firearms, possession of crack cocaine. If we were to decide that the 0.89 grams wasn't sufficient to be a distributable amount, and proven, would it have any effect on the outcome of this case, either on the conviction or on the sentence? Let me address it in two parts, Your Honor. The jury was specifically asked to determine which controlled substance it believed Mr. Shaw was in the possession of. But these were charged in one single count. They were, but there was a special verdict director that required the jury to check off which drug or drugs it believed Mr. Shaw was in the possession of. They checked both marijuana and cocaine base. One other question to your concern, Judge Grunder, is this. Mr. Shaw pleaded guilty to that incident in state court. And so, again, it was another admission by Mr. Shaw of his possession of drugs, a firearm, and I believe in that instance he had, excuse me, Your Honor. Well, my question is, if the crack falls, does the marijuana conspiracy still stand? Yes, the marijuana conspiracy would still stand. And because of the quantity, when you go through the conversion process, when you convert it all to marijuana, I believe, I believe, I'm not certain of this, and I certainly can follow up with the court if you would like, Your Honor. I don't believe that quantity of crack cocaine would substantially have affected where the guideline range was for purposes of sentencing. I think that's right. I don't think it affects it either, but. But here's the other issue. If we take it a step further and you look at what Judge Autry did in this case in the sentence that was imposed, it reminds me a little bit of Judge Woolman's dissent in the Lara Marie's case. Even if it did, I don't think it would have changed or otherwise impacted the sentence that was imposed by the district court. I know that wasn't your question, but if we're looking at a totality of the circumstances, which is what this district court was required to do, and we're looking at the sufficiency of the evidence in the light most favorable to the verdicts that were returned by the jury, whether the crack stays or goes, I don't believe it would have any ultimate impact. To summarize, because I see my time is getting short on the sufficiency of the evidence, the reality was this. Regarding marijuana, the United States proved about eight separate agreements where Mr. Shaw was involved in a conspiracy on the marijuana. There was one regarding the crack cocaine. When you get to count two, this is the possession of the firearm and furtherance of the drug trafficking crime. The United States actually established six separate incidents of Mr. Shaw possessing firearms in connection with his drug trafficking. Again, when you talk about sufficiency, when you talk about credibility, that begins and ends with the jury. The jury had the opportunity to analyze that. Listen, Mr. Shaw's legal counsel questioned the credibility of all witnesses, whether they were cooperators, non-law enforcement, or law enforcement. The jury had all of it before it when it convicted Mr. Shaw on counts one and two, but the jury was also thoughtful enough to take that into consideration when it acquitted him under count three. We know the jury was paying attention in analyzing those issues during the trial. I see my time has expired, so with the limited issue on the Leroy Ruiz topic, which we have conceded and the court has before it, would ask the court to uphold the jury's verdict and affirm the district court's sentence in this case. Thank you. Thank you. So if I can start with a question. Yes. On the crack cocaine, I think you've heard the questions. Even if we were to agree with you that that was an insufficient amount to be a distributable quantity, would it have any effect on the outcome of the case? In regards to the guidelines, possibly not, but I would say that that was... What about the conviction? The conviction, because the marijuana was all coupled into one count, to be honest, probably not. However, I would say that the cocaine count is the only instance where the government had anything where a weapon was seized from Antonio Shaw. That was the only instance where Antonio Shaw physically had a weapon on him. So I think that could take into effect in regards to count two, where the jury could have seen, well, he has guns here and drugs, and therefore, then this could have been in furtherance. So I think it could affect the conviction in that respect with count two, because there was a gun seized in that respect. And so the jury could possibly think, well, if he had a gun there, then that could relate to count two in some respect. And it's clear that count two relates to... To count one. Well, to that particular incident where the gun was found with the crack cocaine. That could have been the jury's possibility. I'm asking, is that what was charged? Count two was in respect to the conspiracy, yes. And the cocaine... But was it limited to the incident where he was arrested with the crack cocaine and a gun, or was it a broader count than that, that he used the gun during the marijuana conspiracy? There was evidence from other lay witnesses that Antonio Shaw possibly had guns during marijuana sales. However, nothing of that nature was seized. So if the jury took into consideration possibly that gun instance where that was the only one seized, then it could have some effect on count two as a result of those convictions. So it could possibly have a result if the cocaine was not sufficient. Well, I pull out the indictment, and it pleads from March 2004 to May 2008 that he possessed. So it wasn't limited to that one incident? No.  Have contact? It wasn't an investigation of Antonio Shaw. It was separate instances, and there were different detectives that were involved with each of these instances. So I wouldn't say that it was an investigation specifically with Shaw over a certain amount of years. It was one instance, and then another instance, and then another instance. And in this case, the government put them all together under the guise of the conspiracy that all of these were now a conspiracy. So it'd be hard to say that it was the amount of years that they investigated him. I don't think that that's the case, because in each case, they charged him with possession, not with the intent to distribute. Nothing was referred to Narcotics Unit or the DEA to have an investigation of just Antonio Shaw. And with respect to David Ewing and sentencing, his accounts vacillated throughout each of his statements. David Ewing was a cellmate of Stanley Carter prior to being a cellmate of Antonio Shaw, and he did state within the sentencing that Carter did mention some facts of these murders. So it's hard to say where David Ewing stands with that. And then in regards to Exhibit 1, where the government does make its biggest argument that was a statement made when he was saying that he was 13 or 14 years old when he was selling dope. However, there was no connection made between those statements and the conspiracy here. Just because he said it one time does not mean that it was continuing from 2004 to 2008. And I think that's the difference. And in relation to the quantity amount of the drugs that the government did present, there were a minimal amount seized and then one witness saying he had 72 pounds, which there's no logical connection in that respect. But I see that my time is up, and thank you. Very well. The case is submitted, and we will take it under consideration.